IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JORGE L. RODRÍGUEZ GONZÁLEZ, et al.,

Plaintiffs

v.

AXA EQUITABLE LIFE INSURANCE COMPANY; DISABILITY MANAGEMENT SERVICES, INC., et al.,

Defendants

CIVIL 06-1717 (JAG) (JA)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the court on a motion to dismiss or limit plaintiffs' claims on grounds of *res judicata* filed by defendants AXA Equitable Life Insurance Company (hereinafter "AXA") and Disability Management Services, Inc. (hereinafter "DMS" and collectively "defendants"). (Docket No. 83, February 1, 2008.) The defendants argue that plaintiffs' claims for damages should be dismissed because they were previously adjudicated at the Puerto Rico Court of First Instance and are therefore precluded by *res judicata*. (Id. at 1.)

On February 8, 2008, plaintiff Jorge L. Rodríguez González (hereinafter "Rodríguez") filed a motion to strike defendants' motion to dismiss. (Docket No. 85.) Rodríguez argues the defendants' motion to dismiss should be stricken because it was filed a year after the deadline. (Id. 1-2.)

CIVIL 06-1717 (JAG) (JA)                 2

On February 11, 2008, those motions were referred to me for disposition. (Docket No. 86.)

On February 13, 2008, defendants filed a motion in opposition to Rodríguez' motion to strike their motion. (Docket No. 87.) The defendants argue that Rodríguez' motion should be denied because, while the defendants' motion to dismiss has been filed outside the deadline for motions to dismiss, the parties and the court agreed that motions dealing with *res judicata* could still be considered. (Id. at 2.)

Having considered the arguments of the parties and for the reasons set forth below, I recommend that defendants' motion to dismiss or limit the plaintiff's claims on *res judicata* grounds be DENIED.

I.  FACTUAL AND PROCEDURAL BACKGROUND

On January 20, 1994, Rodríguez purchased an insurance policy for income disability benefits from AXA. (Docket No. 1, at 2, ¶ 7.) In his complaint, Rodríguez alleged that by April 1996, he was diagnosed with "grand mal epilepsy" and began receiving monthly payments from AXA. (Id. at 2-3, ¶ 8.) AXA confirms that Rodríguez began receiving payments for this condition, but alleges they began in June 1998. (Docket No. 8, at 2, ¶ 8.)

Rodríguez alleges that for three years, AXA paid him the disability benefit on a periodic basis, requiring that Rodríguez give evidence of his medical status.

CIVIL 06-1717 (JAG) (JA)                              3

(Docket No. 1, at 3, ¶ 9.)  At some point, DMS became the third party administrator of AXA's disability policies.  (Docket No. 1, at 3, ¶¶ 9-10; Docket No. 8, at 3, ¶ 9.)  Rodríguez alleged that everything "worked perfectly until [DMS] was given administration of the policy."  (Docket No. 1, at 3, ¶ 9.)

Rodríguez alleged that after DMS became the administrator of his policy, he was forced to "keep visiting doctors and physicians every three (3) or four (4) weeks," and was no longer receiving his monthly payments in a timely manner.  (Docket No. 1, at 3, ¶¶ 11-13.)

As a result, on January 25, 2005, Rodríguez filed a complaint against the defendants in the Puerto Rico Court of First Instance, San Juan Part.  (Docket No. 1, at 3, ¶ 12; Docket No. 83-2.)  That complaint alleged the aforementioned facts (Docket No. 83-2, at 2-7) and prayed that the court enter an injunction against the defendants along with "a declaratory remedy in order to recognize plaintiff's vested and/or contractual rights."  (Id. at 7, ¶ 18.)  Rodríguez also asked that the court order the defendants to "pay the costs, expenses of the litigation, and a reasonable sum for attorneys' fees[.]"  (Id. at 7-8, ¶ 20.)  On May 18, 2005, Rodríguez filed a motion for summary judgment with the Puerto Rico Court of First Instance.  (Docket No. 83-8.)

On summary judgment, the Honorable Oscar Dávlia-Suliveres found that the following facts were not at issue:  (1) Rodríguez was issued a disability insurance

CIVIL 06-1717 (JAG) (JA)                 4

policy by AXA; (2) Rodríguez had acquired rights under the policy; (3) the issue of law to be adjudicated on summary judgment was whether it is sufficient that Rodríguez alone certify he is disabled or if it is necessary for a physician to do so; and (4) Rodríguez had no objection to filing a monthly certification himself, without a physician, especially when the next appointment with a physician exceeds thirty days. (Docket No. 83-5, at 5.) The court found there was no issue as to the defendant's full authority to take a medical examination with its own physicians. (Id. at 6.) The court also found there was no dispute as to Rodriguez' address and former occupation. (Id. at 5.)

The court certified that "[t]he only issue between the parties is whether or not the certification of disability that the insured must send to the insurer must be signed on a monthly basis by a physician." (Id. at 6.) The court found this issue arose from a difference in the parties' interpretation of the following clause in the insurance policy: "If the policy provides for periodic payment for a continuing loss, written proof of loss *satisfactory to us* must be given within 90 days from de [sic] end of each monthly period for which we are liable." (Id. at 7, emphasis in original.) The court noted that Rodríguez understood the clause as not requiring a physician's signature in the monthly proof of loss and the defendants understood that a monthly proof of loss solely by Rodríguez' signature was insufficient. (Id.) The court found that "it is not duly specified in the policy

CIVIL 06-1717 (JAG) (JA)                    5

that the monthly certification of continuity of the loss should be made with the signature of the insured and of the physician involved." (Id.)

The court held that the certification of disability, a two page document entitled "Proof of Loss," (1) required that only the first page be filled by Rodríguez and sent to the defendants on a monthly basis, and (2) required that the second page be filled and sent to the defendants by Rodríguez' physician only when that physician summoned Rodríguez to his office for evaluation. (Id. at 10.) The court also held this would be "without prejudice of the examinations made by the insurer through the insurer's own physician to determine the validity of plaintiff's claim." (Id. at 11.)

The Court of First Instance, however, did not make a decision as to damages, and on July 11, 2005, Rodríguez filed a motion for reconsideration, alleging he had "also claimed damages as a result of the improper and illegal practice" to which the defendants had subjected Rodriguez. (Docket No. 83-9, at 1-2, ¶ 2.)

On July 10, 2005, the court amended its order, holding that it "did not notice that plaintiffs had added an action for damages together with the action for injunction" and held that Rodríguez' claim for damages were dismissed "without prejudice of [Rodriguez] . . . filing the corresponding action in an ordinary civil litigation[.]" (Docket No. 83-10.)

CIVIL 06-1717 (JAG) (JA)				6

On July 21, 2006, Rodríguez filed this complaint. (Docket No. 1.) Rodríguez alleges basically the same contract dispute but notes that the Puerto Rico Court of First Instance had disposed of the aforementioned contract issues and dismissed Rodríguez' claim of damages without prejudice. (Id. at 3-4, ¶ 12.)

On September 11, 2006, the defendants filed an answer to Rodríguez' complaint along with a counterclaim. (Docket No. 8.) The defendants note that the Puerto Rico Court of First Instance had ruled on the parties' obligations under the contract and allege that Rodríguez, since then, had breached the contract by refusing to be independently examined by AXA. (Id. at 4, ¶ 14.) As part of their counterclaim, the defendants allege that, while they continue to make monthly payments to Rodríguez under reservation of rights, not only has Rodríguez not filed a monthly proof of loss as required by the court's judgment (id. at 8, ¶ 15), but refused to submit to medical evaluations by all but one of the defendants' specialists. (Id. at 8-9, ¶¶ 19-23.) The defendants allege that after several attempts to schedule such evaluations, Rodríguez filed the instant complaint. (Id. at 9, ¶ 24.) The defendants argue that because Rodríguez had refused to meet with their physicians for an examination, he forfeited his right to benefits under the policy. (Id. at 11, ¶ 31.)

CIVIL 06-1717 (JAG) (JA)                           7

On September 21, 2006, Rodríguez filed an answer to the defendants' counterclaim, denying most of the defendants' allegations and proposing several affirmative defenses.  (Docket No. 9.)

On October 23, 2006, the court issued a case management order stating that "[m]otions to dismiss or for judgment on the pleadings shall be filed no later than February 9, 2007."  (Docket No. 10, at 6.)  The court also stated that "[a]ll motions in limine must be filed at least ten (10) days prior to the Pre-Trial and Settlement Conference."  (Id. at 10.)

On February 9, 2007, Rodríguez filed a motion to dismiss the defendants' counterclaim, arguing (1) that DMS had no standing to sue and (2) that, under *res judicata*, the counterclaim was precluded by the judgment of the Puerto Rico Court of First Instance.  (Docket No. 18.)

On February 22, 2007, the defendants filed a response in opposition to Rodríguez' motion to dismiss their counterclaim, arguing that (1) DMS had standing because Rodríguez claimed it had some right to the insurance contract and (2) *res judicata* did not preclude the counterclaim because it stemmed from facts occurring after the judgment of the Puerto Rico Court of First Instance. (Docket No. 21.)

On March 13, 2007, an initial scheduling conference was held wherein the parties and the court agreed there would be subsequent motion practice dealing

CIVIL 06-1717 (JAG) (JA)          8

with issue preclusion due to parallel proceedings being conducted in the Puerto Rico Commonwealth Court. (Docket No. 26.)

On June 1, 2007, I issued a report and recommendation wherein I agreed with the defendants' arguments against dismissing their counterclaim, and recommended that Rodríguez' motion to dismiss the defendants' counterclaim be denied. (Docket No. 34.) On July 10, 2007, that report and recommendation was adopted by the court and Rodríguez' motion to dismiss was denied. (Docket No. 39.)

On February 1, 2008, the defendants filed a motion to dismiss or limit Rodríguez' claims on grounds of res judicata. (Docket No. 83.) The defendants argue *res judicata* applies because the complaint filed in the Puerto Rico Court of First Instance and the complaint in this court "both allege the same breach of contract and claim the same damages arising from said alleged breach." (Id. at 2.)

The defendants argue that even the "new element" in Rodríguez' complaint in this court, that defendants "improperly required that Rodríguez be evaluated by independent medical examiners" after the decision by the Puerto Rico Court of First Instance, is barred by *res judicata*. (Id. at 2-3.)

The defendants note that the Puerto Rico Court of First Instance's judgment was "noteworthy for what it did not find: it did not find bad faith, negligence,

CIVIL 06-1717 (JAG) (JA)                    9

willfulness, or any sort of wrongdoing.  It did not find that Defendants had breached the policy." (Id. at 5.)  The defendants argue that if Rodríguez can state a claim for damages, then he must "be limited to claiming damages based on the findings of the Puerto Rico court" and cannot "further litigate the propriety of Defendants' conduct and ask for damages based on findings going beyond those settled by the Puerto Rico court." (Id. at 6.)

On February 8, 2008, Rodríguez filed a motion to strike the defendants' motion to dismiss or limit Rodríguez' claims on the grounds of *res judicata*. (Docket No. 85.)  Rodríguez argues that the defendants' motion to dismiss should be stricken because it was filed after the deadline to file motions to dismiss, February 9, 2007, as settled in the Case Management Order. (Id. at 1-2.)

On February 13, 2008, the defendants filed a memorandum in opposition to Rodríguez' motion to strike their motion to dismiss.  (Docket No. 87.) Defendants argue that the February 9, 2007, deadline no longer applies because in the Initial Scheduling Conference I noted that further motions would be heard on the issue of preclusion, due to parallel proceedings occurring in the Puerto Rico Commonwealth Court. (Id. at 2.)  No deadline was reset for the filing of motions dealing with preclusion, but the defendants argue their motion to dismiss should be treated as motions *in limine* since these motions seek to limit the scope of damages that may be requested by Rodríguez. (Id. at 4.)  Therefore, argue the

CIVIL 06-1717 (JAG) (JA)                    10

defendants, their motion to dismiss will be timely as long as it is filed fifteen days before the pre-trial and settlement conference.  (Id. at 5.)

Defendants argue they had appraised Rodríguez and the court on December 6, 2006, in the Joint Case Management Memorandum, that Rodriguez' claims were barred by *res judicata*.  (Id. at 1, n.1.)  Defendants also argue that their motion was timely because *res judicata* is an "open issue – as is always the case with all affirmative defenses raised in all actions, excepting the lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process. . . ."  (Id. at 4.)

## II.  DISCUSSION

### A.  The February 9, 2007 Deadline

While it is true, as Rodríguez points out, that the deadline for motions to dismiss was originally set for February 9, 2007, the parties and the court agreed at the March 13, 2007, initial scheduling conference that there would be subsequent motions on the issue of preclusion pending resolution of parallel proceedings in Puerto Rico Commonwealth Court.  While the deadline was not reset, it was clear that motions dealing with *res judicata* filed after that date would be considered.  Therefore, the defendants' motion to dismiss due to *res judicata* is not affected by that deadline.

CIVIL 06-1717 (JAG) (JA)                    11

### B. *Res Judicata*

*Res judicata* covers two separate but related doctrines: claim preclusion, which prevents parties from litigating or re-litigating claims that could have been litigated in a prior adjudication, and issue preclusion, which prevents parties from re-litigating a fact essential to a prior judgment. Gener-Villar v. Adcom Group, Inc., 417 F.3d 201, 205-06 (1st Cir. 2005).

Federal courts considering the preclusive effect of prior state court judgments must apply the claim preclusion law of the state which rendered the judgment. Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996).

In Puerto Rico,"[i]n order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." P.R. Laws Ann. tit 31 § 3343.

Rodríguez' complaint and motion for summary judgment both sought an injunction and a declaratory judgment. The Puerto Rico Court of First Instance obliged, interpreted the contract between the defendants and Rodríguez, and ordered that the parties abide by its interpretation. Because Rodríguez did not make a demand for damages in his complaint or motion for summary judgment,

CIVIL 06-1717 (JAG) (JA)                    12

the court did not make any finding of fact as to the damages suffered by Rodríguez from his having to visit a physician every three to four weeks.

If that had been the end of it, then Rodríguez would be precluded from bringing a claim for damages because his failure to do so in the complaint would have waived such claim under the doctrine of *res judicata*.  However, as the Puerto Rico Court of First Instance noted in the amendment to its summary judgment, Rodríguez amended his complaint to include a claim for damages and that amendment simply went unnoticed by the court.  Therefore, upon motion by Rodríguez, the court amended its decision to allow him to specifically litigate a claim for damages on a different occasion.

The defendants argue that because the court "did not find bad faith, negligence, willfulness, or any sort of wrongdoing," then the defendants' conduct can no longer be litigated.  But such a statement is a misrepresentation of the court's decision:  the court did not find there was bad faith, negligence or willfulness because it did not confront those issues.  That cannot be understood as a decision by the court that there was no bad faith, negligence or willfulness and therefore cannot be seen as *res judicata* to the issue of damages. To argue otherwise, especially after the court's amendment, is to ignore the procedural and factual history of the case below.

CIVIL 06-1717 (JAG) (JA)                    13

### III.  CONCLUSION

In view of the above, I find that Rodríguez' claim for damages are not precluded by *res judicata*.  The Puerto Rico Court of First Instance did not consider the facts related to a damages claim and specifically held its decision interpreting the contract between the defendants and Rodríguez was not in prejudice of such a claim.  Therefore, it is my recommendation that the defendants' motion to dismiss or limit plaintiff's claims on grounds of *res judicata* be DENIED.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140 (1985); Paterson-Leitch v. Massachusetts Elec., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13 (1st Cir. 1983); United States v. Vega, 678 F.2d 376 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 12th day of March, 2008.

                                   S/ JUSTO ARENAS
                                   Chief United States Magistrate Judge